Your honors, good morning. My name is Michael Levine. I represent Dr. Spear. Your honors, the conviction in this case should be reversed for three independent reasons. First, the government breached paragraph 12 of the plea agreement. Second, the factual basis for the plea was insufficient. And third, the district court erred in not permitting Dr. Spear to withdraw his plea of guilt. So you think the breach argument is your strongest? That's what you're leading with today? Yes. I would think yes. If I had to choose, I'll go with the breach. I may be wrong. You'll decide. You reordered them. I have one fundamental problem with the breach argument that I'd like you just to comment on. Sure. I read the paragraph 12 right of the plea agreement. That's what we're talking about? Yes. I read it, and I sort of agreed with your argument that, yeah, I would have interpreted that as a defense lawyer, that we've narrowed down our differences, and, Your Honor, here's the difference. We're stating it for you, and there's nothing else. Well, I'm halfway there, then. Okay. But there was no objection. That's true. And I don't – how could we possibly construe this as having – there was a meeting of the minds on this point. When defense counsel came in, there was an entire evidentiary hearing just on the issue of whether this uncharged conduct was going to be counted, and nobody said anything. That's true, but I'm turning to the Ninth Circuit law in Joseph – It's a breach that gets you halfway there. It gets me halfway there, but – And then you have a big gap to – But I'm going to go the other half of the way. I'm going to go the other half of the way right now. You need to take a long leap because – It is. It is a failure to object where especially – I mean, sometimes there's a formal objection, but, you know, when the objection can actually make a difference, when the district judge can then say, okay, well, let's look at this and – Well, there was – there was – the record shows there were objections – I don't have the ER sites in front of me, unfortunately, but there were objections filed to relevant conduct by Mr. Nishimura. There was no specific objection raised that it was a breach of the plea agreement. I concede that. Okay. But let me just – given the impact that this uncharged conduct was going to have on the guidelines range, if you were the defense lawyer and you had negotiated a deal where you thought you had barred the prosecution from relying on that, they put on an expert report that – I can't even remember how many pages it was. Wouldn't you have just screamed bloody murder to the judge saying, Your Honor, this is outrageous. We negotiated with them. They said they weren't going to rely on this, and now look what they're doing. I – I understand what the court's saying, and I can't disagree with that, but nevertheless, we have a doctrine in the Ninth Circuit that if the – if the issue is a matter of law, if it's a matter of law, this is a breach, and I – from the court's statements, I suggest that it is. It's a breach as a matter of law, and the government isn't prejudiced. There's de novo review, and I point – after all, there's – there could be no prejudice – Wait a minute. You say if there's no prejudice – this is a contract, and a party's performance under a contract is – can be some evidence of how the parties understood the contract, and you're saying, well, they got it all in without objection, but there's no prejudice. Well, of course there is. If it was a breach of contract, and they're flying – moving forward in the face of a breach, and so it renders everything thereafter void, what's – why is that the prejudice? Well, I'm looking at it from a different way. I'm looking at it in the sense that there's never prejudice to the government when the district court miscalculates the guidelines. That's from a case – well, I don't have to cite a case for that, but I do. It's not in my brief. It's United States v. Evans-Martinez, 611 Fed Third 635, which, interestingly, is also a Hawaii case. But because there was a breach of the agreement, the district court miscalculated the sentencing guidelines. In that sense – in that sense, there was no prejudice to the government because, as Evans-Martinez says, there's never prejudice to the government when the district court has miscalculated the guidelines. I'm still stuck halfway across that bridge because I don't think there was a breach. You haven't convinced me in anything you've said so far that, in fact, paragraph 12 was intended to keep the government from relying on that uncharged conduct. Well, I thought you had said initially that that's the way you read the paragraph. I'm saying I would have read it that way. It's ambiguous. It could be read the other way, as the government's now arguing. So then I say, OK, well, what's the best evidence we have of what the party's really intended? Well, let's look what happened when the government actually rushed into court with all of this uncharged conduct that was going to, what, triple, quadruple the relevant guidelines range? And the defense lawyer didn't say, Your Honor, this is a breach? There was no objection made. This may be the subject of a later 2255 action. I wasn't the trial lawyer below. I wasn't even the lawyer that wrote the opening brief. I came in on the, as the court may know, I came in as writing the reply brief. But as I read the, as I read paragraph 12, and I suggest, as any reasonable person would read paragraph 12, regardless of the action of the parties below, that there is an agreement there, is an implicit agreement that the government is limiting what it is going to introduce as relevant conduct. It's limiting itself to the relevant conduct that's in, at most, at most, that's in the uncharged conduct. But not necessarily. It doesn't say, this is, Your Honor, we've narrowed it down and this is the only remaining disagreement between the parties. It doesn't say that. It's true, but we have to read, as the court knows, we have a million cases in this circuit, including. Yeah. Let's jump over to paragraph 20. Well. So how does that impact the interpretation of paragraph 12? All right. First of all, I'll get to that right now. But just as a general rule, we know from countless Ninth Circuit cases that all plea agreements are read, any ambiguities in plea agreements and any inconsistencies are. The ambiguity. So answer the question about 20. Paragraph 20 is a general, is a general statement that the government is going to apprise the court of. Related matters. But it doesn't say specifically, and we're going to be introducing uncharged conduct. There's no statement that it is. Any matters in aggravation or mitigation. Yes, but it doesn't say that. And we're going to argue that this is relevant conduct that's going to up the base offense level. That's what aggravation mitigation means. I mean, there's no point in putting in aggravation mitigation unless it's going to up or reduce or up the. I understand. I understand what the court's saying, but I still think it's an ambiguity that cuts against the government. But even if the court is right, even if the court is right, this is a general provision that has to yield paragraph 20 to the more specific provision in paragraph 12. And under that rule, the Latin phrase escapes me for the moment. Exclusio illness, et cetera, et cetera. All I know is I'm all or nothing, Your Honor. But it's not exclusio. I mean, it's not exclusio. They have this one provision in 12. And then it says, by the way, the defendant understands the prosecution put in other stuff. That is a mitigation of aggravation. And uncharged conduct can be aggravating. And isn't, as we sort of see what happened in the courtroom, why don't we say the defense lawyer, why don't we just presume the defense lawyer was aware of both provisions. And when the report comes in, he says, well, yeah, well, it comes in under 20. I can't object because it's obviously okay. Nevertheless, whether or not they did the proper thing or not, I come back to the point I made that if you read 12 and 20 together, 12 is more specific. We're forgetting about the Latin phrase. Less than two minutes, and you've got other points. All right. One of my colleagues suggested it might be stronger, so maybe. Returning to an insufficient factual basis, Your Honor, there's no Dr. Speer never said he intended to prescribe medication for an illegitimate purpose. That's intent to prescribe for an illegitimate purpose is an essential element of the crime. What he did may have been incompetent, may have been malpractice. But it doesn't make it, it doesn't mean it's criminal. Let me get this clear. Does this need to come, does evidence need to come out of his mouth? No, it can also. So he can, he could stand mute, and the government then prophesies we've got witnesses, and, you know, all the district court has to know or to assure itself of is that there is evidence that if you went to trial, there would be evidence to sustain this charge. That's true. Not that it's undisputed, not that the jury couldn't find it not credible, but just that there's enough there. That's true. How does the fact that he said dispense on this tribute, how does that help you, Ernie? It helps because we have to be sure that someone just isn't pleading guilty to being an incompetent doctor or a doctor who commits malpractice, a doctor who does things that no other doctor does. It has to be a crime. It's only a crime if it's an intent. That's a different objection. That's an objection saying he didn't understand the nature of the crime, so he pled guilty. This is not an objection saying there's not a factual basis, because there was a factual basis. You take his statement, and if that's not enough, you've got the government's public evidence. Now, maybe he misunderstood it. Maybe this is proof that he misunderstood the charge. If that's an objection, you don't have it here. It's not an issue of appeal. Well, he's maintained, turning to the third point, that one of the reasons that the court erred in not permitting him to withdraw the guilty plea was that he maintained his innocence because he did not intentionally write prescriptions or distribute drugs with an illegitimate purpose. And there's statements that he makes that suggest that he was confused. You know, we talk about the district judge having that this is a discretionary matter allowing someone to withdraw this guilty plea, and we have language over and over in the cases that this is supposed to be liberally construed, that you're supposed to give the benefit every benefit. But so it should have been done here. Let the jury decide the question. The man is coming forward. He's saying, I want to withdraw my plea. I'm not guilty. I didn't have the intent. Let the jury decide this once and for all. The judge should have exercised his discretion to withdraw the guilty plea. We're supposed to interpret this provision liberally and broadly. The court says that over and over and over again. But on matter of discretion, we also have said over and over and over again, on matter of discretion, we only request the court for abuse of discretion. Well, this was an abuse of discretion. This was an abuse of discretion. The man is coming in. He's a medical doctor, and he's saying, all right, he's vacillating. I have trouble telling your client apart from everybody else who gets cold feet after they plead guilty. And a lot of them, a lot of defendants say, oh, my God, I've pleaded guilty. I've had a change of heart. How is your client any different than anybody else who says, look, I have a good defense. I wish I hadn't pleaded. Well, it's no surprise that he has a change of heart. It's no surprise with all due respect, Your Honor, that he has a change of heart. The first pre-sentence report comes out 70 months, 70 months. Then the government comes in with its 300 cases of uncharged conduct, and the guidelines double. Now, if you're a client, you're sitting there going, what the heck is going on? I pled guilty over here. This is the draft pre-sentence report. Now the government does its stuff, and now it's doubling, and I'm looking at 151 to 180 months. This isn't why shouldn't he withdraw his plea? Why shouldn't he move to withdraw his plea? Who's going to sit there and say, oh, I'll just go with, like, a lame to slaughter? This was an abuse of discretion. Judge Ezra should have allowed him to withdraw the plea. Let the jury decide whether this man is a criminal or just an incompetent slack. You don't need to have him hear you. It's okay. It's my trial. It's okay. Sorry. Okay. And the jury, I think, will be starting to disregard counsel's comments. If the Court has any further questions. If the Court has any further questions. We'll hear from the government. Thank you, Your Honor. Thank you. May it please the Court. My name is Cynthia Lee, and I'm Assistant United States Attorney for the District of Hawaii. You were not the trial counsel here? I was not the trial counsel. Okay. I was just put on this to argue about three weeks ago. Wow. That's a big record to get up to speed on. Yes. Well, that's unfortunate, obviously, because, you know, I mean, that paragraph 12 is ambiguous in some ways. Maybe you could speak to that issue. I have to say, as a former prosecutor, I probably would have, if I had drafted that, it probably would have been because I had negotiated everything else down to that one point that I was going to highlight for the judge. So that's why I came out. That's why I told the defense counsel. I came out and I said, yeah, boy, that seems reasonable. So it's unfortunate that we don't have the lawyer who actually negotiated that for us, I suppose. And when you're answering the question, because it hasn't been raised yet, but you're arguing primarily you raised the issue of whether he waived all appeal rights with respect to other than sentencing. I don't know where there's a clear statement of that. And so in terms of the ambiguity of this plea waiver, I'm quite concerned that if this is a standard plea agreement, it sure as heck isn't very clear. Did you understand the question? Correct me if I'm wrong. I'll first address the ambiguity without conceding it. I don't think there is any ambiguity. I don't think there is error. The body of cases cited in the briefs deal with plea agreements that set forth clearly what the prosecution was supposed to do with sentencing. In Puckett, the prosecution was supposed to clearly recommend a three-level reduction of acceptance. It didn't. Santabello, it was to take no position. And then it argues the highest sentence. Can I ask you this? In light of paragraph 20, why bother putting in paragraph 12? What does it do? I'm sorry? In light of paragraph 20, why bother putting in paragraph 12? What's it doing? It's not doing anything. Well, my understanding is it's a practice of this office because when you're dismissing counts, so in this case a number of counts were dismissed to prevent the defendant from saying, well, then you can't argue the facts from the dismissed counts as relevant conduct. Then paragraph 12 was put in to ensure that. But we can bring in 300 uncharged counts that never saw the light, never went before a grand jury. We can just bring that right in. Correct. Paragraph 12 does not say we can only. That makes no sense. That's what I'm saying. That makes no sense. If that's the rationale for why you put in paragraph 12, that makes no sense. Well, Your Honor, agreed. This is not a model of clarity. The Puckett court, you know, I think is controlling. It says that plea agreements are not always the models of draftmanship. In this case, it's silent. It doesn't say that we can. These are trial lawyers. If you want a good contract, you get a contract lawyer, right? Trial lawyers don't do contracts. Exactly. But I think it's just silent, that we admit it's silent. I don't think there's error. But if there is error, it's certainly not clear. And plain error applies here. There's no two ways about it. Puckett, the Supreme Court case from 2009, is on point. You'd be in a much tighter spot right now, wouldn't you, if the defense had objected and judges had ruled objection. But that's exactly where the objections are supposed to occur. The district court was in a much better position to handle this kind of objection and remedy it in a much more simple fashion. And that's exactly why plain error exists, so that a defendant doesn't, by this time, wait and see what happens. But the objection has come in. It wouldn't have come in when he tried to withdraw his guilty plea, right? The objection should have come in at the time the report was filed in the court, right? Correct. Correct. It was filed before sentencing in December of 2009, and the sentencing occurred in March of 2012. And at no point did the defendant object on his ground. In fact, there was... And when was the withdrawal motion? There were two withdrawals. In fact, on January 5th of 2010, there was the first desire to withdraw. And on March 1st, 2010, he withdrew his first motion to withdraw. On June 30th, 2011, there was a hearing on the second motion to withdraw the guilty plea. And then again on July 8th, 2011, there was a second hearing on the second motion to withdraw the guilty plea. At no time did he raise this objection that's before us today. In fact, there were three sentencing hearings subsequent to that on, I believe, November of 2011, January 2012, and then March of 2012, which was the actual imposition of judgment and the sentence. And at no time did the defendant raise the objection before us. And before that, in February 2012, there was a hearing to set aside the plea agreement for violation and breach of the plea agreement by the government. So he alleged breach of the plea agreement, but not on the basis before us today on a completely different section of the plea agreement and for a completely different alleged breach, not the one here today. Are you here to stand by your waiver argument? Not your, but the waiver argument that trial counsel made? Yes, Your Honor. I do stand. I mean, it says sentencing. He's waiving his right to appeal the sentence. I just don't even understand how you could make the argument that he waived everything else. Well, the issue here, I think, with waiver is was it knowing and voluntary, and I think it really was. If it's ambiguous, you can't be knowing and voluntary.  Where in the agreement does it say anything beyond the sentence? Well, 18 U.S.C. 3742 is the only thing that provides the defendant with his right to appeal, and that is tracked and mirrored in the appellate waiver in this plea agreement. Okay, where? What paragraph are we looking at? I'm looking at paragraph. My apologies. Paragraph 13? Yes. Defendant is aware that he has a right to appeal the sentence imposed under Title 18 United States Code 3742A, but it continues to say defendant knowingly waives the right to appeal, except as indicated in subparagraph B below, any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any of the grounds set forth in 3742 or on any ground whatever. Excuse me, counsel. Paragraph 13 says the defendant is aware that he has the right to appeal the sentence imposed under Title 18 Section 3742A, and the whole paragraph goes on to restrict and specify what aspects of his sentence he is giving up. It doesn't say the defendant is aware that he has the right to appeal under 3742A. Wouldn't you agree? That particular sentence just says sentence, but I think that later on, on any ground whatever, is very broad. Where's that? If you look at, let's see, the third to last line of paragraph 13, so to get there it says defendant knowingly waives the right to appeal, then it continues on any of the grounds set forth in Section 3742 or on any ground whatever in exchange for the concessions made by the prosecution in this plea agreement. It's a very broad waiver of appeal, and 3742A clearly concerns a judgment and sentence. I mean, that's how you get the sentence. It's a judgment and a sentence, and it's a very broad waiver of appeal, although Anglin was not on point that Anglin Court did consider this exact provision in a plea agreement and said it was a very broad waiver of appeal. So your position is he can appeal the sentence to some extent, Well, if it's outside the maximum provided by the statute. That's correct. There are two limited exceptions. Okay. I still want to come back because this is important. You're saying this has been approved by our court. I do believe there's some cases that have found it's not acceptable. Defendant knowingly waives the right to appeal, except sub-paragraph B, any sentence within the maximum provided in the statutes of conviction or the manner in which the sentence was determined on any of the grounds set forth in Section 3742 or on any ground whatever in exchange for the concessions. And so you're saying that's a clear statement of waiving everything, notwithstanding it's talking in the entirety of the context of this paragraph about a sentence waiver. Correct. That's what you rely on for clarity. That, in part, on that. Thank you. Okay, thank you. Just 30 seconds. Just following up on Judge Fischer's point, it was. A minute. I'm sorry? Just trying to do the clock. Can we have a minute on the clock? It says, I don't know what I have here on the clock. It says 339. No, we need a minute. It's like my computer. This is negative 3 minutes. We need to go to zero first. I know. It seems like I give up.  Two, one. Okay. The paragraph about which the U.S. attorney was speaking related only to sentencing. And I point to the United States. There's a little, John, that's mentioned in the brief that there you have a very clear and big statement about what the government can do when it wants to. I'm not sure I understand your point. I mean, it says you can appeal sentence only and even that under limited circumstances. Here you're trying to withdraw the guilty plea. I don't see why that's not covered. The entire argument about withdrawal of the guilty plea isn't covered by the waiver. No, the withdrawal of the guilty plea is not covered by the waiver. We have case law to that. Because it's not mentioned expressly in the waiver provision. I thought it said everything except. Well, it didn't say. It said everything. Everything except sentences that meet certain criteria. But when there's an allegation of breach of a plea agreement, then that's outside any waiver. Why? Well, this court said as much in its dissenting opinion in Gonzales just recently. You know, when you say the court said it in a dissenting opinion, then you're sort of, that's total nonsense. Well, I mean, you said in a dissenting opinion that, Your Honor. But the majority allowed. That's proof that I'm wrong. No, you're not wrong. You're not wrong. You're right. You have not been wrong twice. See you later, Your Honor. Okay. KJSR, you stand cemented.
judges: Kozinski, Fisher, Watford